UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

YITZ GROSSMAN aka YITZCHOK
GROSSMAN,

                              Petitioner,

              -against-


FEDERAL BUREAU OF PRISONS,

                              Respondent.

**ORDER**

19 Civ. 5635 (PGG)


PAUL G. GARDEPHE, U.S.D.J.:

              Petitioner Yitz Grossman brings this habeas petition pursuant to 28 U.S.C. §

2241, arguing that he was unlawfully deprived of good conduct time.  For the reasons set forth

below, Grossman's petition is denied.

**BACKGROUND**

**I.      FACTS**

              On July 6, 2015, Petitioner was sentenced in the United States District Court for

the Southern District of New York to 60 months' imprisonment for conspiracy to commit

securities fraud, in violation of 18 U.S.C. § 371.  See Judgment, United States v. Grossman, No.

13 Cr. 410 (S.D.N.Y. July 7, 2015), Dkt. No. 212.  On March 28, 2019, Petitioner was released

from FCI Otisville to home confinement.  (See Johnson Decl., Ex. B (Dkt. No. 12-3) at 1)

              On June 29, 2018, while incarcerated, Petitioner made a phone call to an approved

contact on his phone list.  (Pet. (Dkt. No. 2) at 25)[1]  During the call, Petitioner asked that contact

---

[1]  The page numbers of documents referenced in this Order correspond to the page numbers designated by
this District's Electronic Case Filing system.

to call another individual who was neither on Petitioner's approved contact list nor on his approved visitor list.  (Id.)  On September 19, 2018, based on that phone call, a disciplinary hearing officer ("DHO") found that Petitioner had committed the prohibited act of "Use Of The Telephone For Abuses Other Than Illegal Activity Which Circumvent The Ability Of Staff To Monitor Frequency Of Telephone Use, Content Of The Call, Or The Number Called," in violation of 28 C.F.R. § 541.3 (Table 1, Code 297).  (Id. at 27-29)  Finding "no evidence" that Petitioner "did not commit the prohibited act as charged," the DHO sanctioned Petitioner with 27 days' disallowance of good conduct time, and three months' loss of phone.  (Id. at 28)

## II.  PROCEDURAL HISTORY

On September 20, 2018, Petitioner submitted a Regional Administrative Remedy appeal regarding the decision of the DHO.  (Id. at 31)  Petitioner made four arguments in his appeal:  (1) he did not violate Code 297; (2) Code 297 was inapplicable because Petitioner had not participated in a three-way call or used another inmate's PIN; (3) Petitioner was entitled to a copy of a November 27, 2000 memorandum from the "Disciplinary Hearing Administrator of the Mid-Atlantic region" (the "November 2000 Memorandum"), which clarifies the implementation of Code 297; and (4) the DHO was not impartial because he worked closely with the case manager.  (Id. at 32)  The Regional Director denied Petitioner's appeal.  (Id. at 34)

On or about December 28, 2018, Petitioner filed a Central Office Administrative Remedy Appeal, reiterating the same arguments he had made in his Regional Administrative Remedy Appeal.  (Id. at 35-36)  The Central Office denied Petitioner's appeal, concluding that "[t]he determination of the DHO is reasonable and supported by the evidence," and that Petitioner's "Due Process rights were upheld during the discipline process."  (Id. at 43)

On June 17, 2019, Petitioner filed the instant habeas petition pursuant to 28 U.S.C. § 2241. (See Dkt. No. 2) He argues that the DHO hearing did not afford him constitutionally sufficient process because (1) Petitioner was not referred to the DHO by a Unit Disciplinary Committee ("UDC"); (2) the DHO was not independent or impartial; (3) there was no evidence to support a finding that Petitioner violated Code 297; and (4) the November 2000 Memorandum was not provided to Petitioner and, therefore, constituted a Brady violation. (Id. at 9-20)

## DISCUSSION

I.  **LEGAL STANDARD**

Petitioner seeks relief under 28 U.S.C. §2241. (See Dkt. No. 2) "A writ of habeas corpus under § 2241 is available to a federal prisoner who does not challenge the legality of his sentence, but challenges instead its execution subsequent to his conviction." Carmona v. U.S. Bureau of Prisons, 243 F.3d 629, 632 (2d Cir. 2001) (citing Chambers v. United States, 106 F.3d 472, 474-75 (2d Cir. 1997); Kingsley v. Bureau of Prisons, 937 F.2d 26, 30 n.5 (2d Cir. 1991)). "Through a petition pursuant to 28 U.S.C. § 2241, a federal prisoner may seek to expunge 'disciplinary sanctions from his record, including the loss of good time credits.'" Nichols v. Von Blanckensee, No. 18 Civ. 754 (VB), 2018 WL 4387558, at *2 (S.D.N.Y. Sept. 14, 2018) (quoting Carmona, 243 F.3d at 632). Petitioner's challenge to the BOP's disciplinary process was thus "properly brought" under § 2241. Carmona, 243 F.3d at 632.

In a prison disciplinary proceeding "the full panoply of rights due a defendant in [a criminal prosecution] does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Where, as here, a petitioner's challenge to prison disciplinary proceedings sounds in due process, the reviewing court must determine only whether the petitioner received: "advance written

notice of the charges against him; a hearing affording him a reasonable opportunity to call

witnesses and present documentary evidence; a fair and impartial hearing officer; and a written

statement of the disposition, including the evidence relied upon and the reasons for the

disciplinary actions taken." Sira v. Morton, 380 F.3d 57, 69 (2d Cir. 2004) (citation omitted).  In

addition, the district court must determine that "'the findings of the prison disciplinary board

[were] supported by some evidence in the record.'"  Williams v. Menifee, 331 F. App'x 59, 60-

61 (2d Cir. 2009) (summary order) (quoting Superintendent v. Hill, 472 U.S. 445, 454 (1985)).

As stated above, Petitioner argues that he suffered four procedural deprivations:

(1) he was not properly referred to the DHO; (2) the DHO was not impartial; (3) the DHO's

finding was not supported by any evidence; and (4) Petitioner was not provided with exculpatory

material.  For the reasons set forth below, none of Petitioner's arguments have merit.

## II.    WHETHER PETITIONER WAS PROPERLY REFERRED TO A DHO

Petitioner argues that his due process rights were violated because "[p]olicy

requires that a UDC refer a case which may result in more than minor sanctions," and Petitioner

had the functional equivalent of "no UDC hearing."  (Pet. (Dkt. No. 2) at 12)  Whether Petitioner

had a UDC hearing does not matter, however, as long as the BOP provided him with the

requirements outlined in Wolff and Sira:  "advance written notice of the charges against him; a

hearing affording him a reasonable opportunity to call witnesses and present documentary

evidence; a fair and impartial hearing officer; and a written statement of the disposition,

including the evidence relied upon and the reasons for the disciplinary actions taken." Sira, 380

F.3d at 69.

Here, the record demonstrates that Petitioner was (1) provided with a written copy

of an incident report on July 5, 2018, notifying him that his June 29, 2018 phone call violated

prison disciplinary rules; (2) given a hearing before a DHO on August 29, 2018 in which he waived the right to call witnesses; and (3) provided with a written statement on September 19, 2018 of the disposition, which included a statement of the evidence relied upon and the reasoning for the decision.  (<u>See</u> Pet. (Dkt. No. 2) at 25, 27-29)  Accordingly, Petitioner received all the process to which he was constitutionally entitled and any noncompliance with internal prison regulations regarding Petitioner's UDC hearing did not violate due process.  <u>See</u> <u>Agosto v. Hufford</u>, 13 Civ. 4082, 2014 WL 2217908 (S.D.N.Y. May 8, 2014), at *3 ("[T]o the extent internal prison regulations grant protections beyond the constitutional minimum, noncompliance with those regulations do not typically offend due process.")

## III.  <u>WHETHER THE DHO WAS IMPARTIAL</u>

Petitioner argues that he was not afforded due process because the DHO overseeing the disciplinary process was not fair and impartial.  (Pet. (Dkt. No. 2) at 11-12) Petitioner argues that, pursuant to 28 C.F.R. § 541.16, a DHO cannot be a UDC member, and, in this case, the DHO was a UDC member.  (<u>Id.</u>)  Petitioner further argues that the DHO worked with the case manager who reported the June 29, 2018 phone call.  (<u>Id.</u> at 12)  These arguments do not establish that the DHO overseeing Petitioner's disciplinary proceeding was biased.

As to Petitioner's first argument, 28 C.F.R. § 541.16 has not be in effect since 2010.  <u>See</u> Final Rule, 25 Fed. Reg. 76263 (Dec. 8, 2010) (amending 28 C.F.R. § 541).  The applicable rule is 28 C.F.R. § 541.8(b), which requires only that the DHO not be "a victim, witness, investigator, or otherwise significantly involved in the incident."  Petitioner has not argued that the DHO fell into any of these categories.  Accordingly, the DHO was not impartial as defined by the applicable federal regulation.

Petitioner's second argument – that the DHO was not impartial because he worked with the case manager who reported the incident – cannot support a due process violation. "It is well recognized that prison disciplinary hearing officers are not held to the same standard of neutrality as adjudicators in other contexts." Allen v. Cuomo, 100 F.3d 253, 259 (2d Cir. 1996). An impartial hearing officer is "one who, inter alia, does not prejudge the evidence and who cannot say, . . . how he would assess evidence he has not yet seen." Patterson v. Coughlin, 905 F.2d 564, 570 (2d Cir. 1990). In addition, "[a]dministrators serving as adjudicators are presumed to be unbiased." Allen, 100 F.3d at 259.

The fact that the DHO worked with the reporting officer is not enough to demonstrate that the DHO would "prejudge the evidence." Patterson, 905 F.2d at 570. Petitioner has not explained how the DHO's relationship with the reporting officer influenced the DHO's decision in any way. Without such explanation, Petitioner's arguments cannot sustain a finding of impartiality. See, e.g., Benson v. United States, 625 F. App'x 20, 23–24 (3d Cir. 2015) (summary order) (holding that the petitioner's argument "that the DHO was . . . inclined to accept [the reporting officer's] account of events over his own because the DHO worked with [the reporting officer]" insufficient to establish that the DHO was impartial).

IV. **WHETHER THE DHO'S DETERMINATION WAS SUPPORTED BY "SOME EVIDENCE"**

Judicial review of a DHO's findings "is limited to determining whether the disposition is supported by 'some evidence.'" Sira, 380 F.3d at 69 (quoting Superintendent, 472 U.S. at 455). "This standard is extremely tolerant and is satisfied if 'there is any evidence in the record that supports' the disciplinary ruling." Id. (quoting Friedl v. City of New York, 210 F.3d 79, 85 (2d Cir. 2000)).

Petitioner argues that there was no evidence to support the DHO's determination that he violated Code 297 because that code is applicable only to the limited types of actions set forth in the November 2000 Memorandum – specifically when an inmate participates in a three-way call, third party call, conference call, or uses a credit card number to place a call. (Pet. (Dkt. No. 2) at 12-18) This Court disagrees.

28 C.F.R. § 541.3 lists acts that inmates are prohibited from committing. Code 297 is a description of one such act and reads: "[u]se of a telephone for abuses other than illegal activity which circumvent the ability of staff to monitor frequency of telephone use, content of the call, or the number called. . . ." 28 C.F.R. § 541.3 (Table 1, Code 297). The November 2000 Memorandum relied on by Petitioner does not limit the use of Code 297 to a defined set of circumstances; rather, it clarifies that "what differentiates the Code 297 from the Code 397" is that Code 297 "should be used when an inmate circumvents telephone monitoring procedures," not when he or she uses "the telephone to further criminal activity." (See Nov. 27, 2000 Memorandum (Dkt. No. 12-4)) The references to "using another inmate's PIN number," "participat[ing] in a three-way call, third-party billing, a conference call, or us[ing] a credit card number to place a telephone call" are examples of Code 297 violations—they are not an exclusive list of Code 297 violations. (Id.) Petitioner's reliance on the November 2000 Memorandum is, therefore, misplaced.

This Court further concludes that there was evidence that Petitioner violated Code 297. It is uncontested that Petitioner dialed the number of an approved contact and then asked that contact to call another individual who was neither on Petitioner's approved contact or an approved visitor list. (Pet. (Dkt. No. 2) at 16) These facts could support a finding by the

DHO that Petitioner was trying to circumvent the ability of the prison staff to monitor whom he was calling. Accordingly, the "some evidence" standard is met.

## V.     WHETHER THE DHO FAILED TO PROVIDE PETITIONER WITH EXCULPATORY EVIDENCE

Petitioner argues that exculpatory evidence was withheld during his disciplinary hearing because the DHO did not permit him to obtain a copy of the November 2000 Memorandum. (Pet. (Dkt. No. 2) at 18-19) As an initial matter, "the Second Circuit has never held that the Brady rule, requiring the disclosure of material, exculpatory evidence has any applicability in a prison disciplinary setting." LaTorres v. Selsky, No. 9:09-CV-532 FJS/DEP, 2011 WL 7629515, at *6 (N.D.N.Y. Aug. 1, 2011). Even assuming that (1) the BOP was required to turn over exculpatory material and (2) the November 2000 Memorandum is such material, there is no evidence that the BOP tried to suppress the Memorandum. In fact, Petitioner's staff representative obtained the material from the internet, the DHO allowed Petitioner's staff representative to "read the memorandum to Petitioner," and Petitioner was able to "transcribe the contents" of the Memorandum. (Pet. (Dkt. No. 2) at 12) Accordingly, there is no evidence that any exculpatory information was withheld from Petitioner.

## **CONCLUSION**

For the reasons stated above, the Court concludes that Petitioner's constitutional rights were not violated by his disciplinary hearing or by the revocation of good time conduct. The petition for a writ of habeas corpus is DENIED. The Clerk of Court is directed to close this case.

Dated: New York, New York
      November 18, 2019

SO ORDERED.

_____

Paul G. Gardephe
United States District Judge